We'll go ahead and proceed with the first case. It's Morrissey versus the United States. Mr. Ulis is here for the appellate. Mr. Pollack for the appellee. Mr. Ulis, you may begin. Good morning, Your Honors. May it please the Court. My name is Richard Ulis, appearing for Plaintiff Appellant Joseph Morrissey. And so the Court is aware I have reserved three minutes of my time for rebuttal. Your Honors, the IVF procedure here is qualified medical care because it affected a bodily function of Joseph Morrissey. Can I ask you just a question? Yes, Your Honor. And it sounds like we might already be there. But just to clarify, so you're not relying on the disease prong of the definition? That's correct. Nor the structure piece of the latter half of the disjunction. This is only about whether the IVF services affected Mr. Morrissey's function, bodily function. That is our argument, Your Honor. Yes. Now, the government disagrees that there was such an effect. Both sides do agree, however, that what we have here is a statute that's unambiguous and that the terms should, therefore, be afforded their plain and ordinary meaning. And in fact, the government in its briefing has suggested that the parties in the Court look to the dictionary to help guide the interpretation and the specific meaning of the term effect in this instance. And when we do that, we see that to effect means to produce an effect or an influence. And effect, in turn, is defined as a state of accomplishment or fulfillment. Now, that definition of effect encapsulates perfectly the obvious impact that this procedure had on Joseph Morrissey. It allowed him to accomplish biological reproduction that he otherwise would not have been able to accomplish in the absence of medical intervention. There's absolutely no authority to support your interpretation of the statute, right? I'm not aware of any authority that would support an interpretation of the statute that would include surrogacy that didn't physically affect the body as a deductible medical expense. Your Honor, there are no reported decisions. We concede that. We do know of instances, however, where the government has allowed for surrogacy expenses to be deducted for heterosexuals, where, for example, a woman was unable to carry a baby with a term. And the IRS went ahead and allowed that deduction to go forward. For the woman? Yes, sir, Your Honor. That's clear that her bodily function was affected. Well, but Your Honor, in that context, they were using a surrogate. So the resulting embryo was not implanted into the female's body in that context. Now, the other thing I would say, Your Honors, is that regardless of these reported decisions that are cited throughout the briefs, we could look to analogous expenses that the IRS regularly allows as deductible to see that we don't have to have this physical alteration of a structure or function of the body that the government is arguing for here. And this is one of the problems with the government's argument is that it's arbitrarily picking an unreasonably narrow definition of the term fact and elevating one form or one definition of this term. And at the expense of coextensive definitions, these are not mutually exclusive. Where would we find that? You said that the IRS has allowed deductions when the physical function of the body is not affected for the taxpayer. When did that happen? I'm sorry, Your Honor. We would say that these other examples did affect the structure function. They didn't alter it the way the government is saying. And I'll give you two examples off the bat. Hearing aids and eyeglasses are deductible expenses, according to the IRS under Publication 502. None of those expenses, when a patient puts on eyeglasses, they're not physically altering their eyesight. They're not physically altering their eyes. It is affecting their eyesight in the exact same way that the IVF procedure here is affecting Joe Morris's reproductive function. So let me kind of test that a little bit, because it seems to me that in human beings, anyway, the reproductive process requires two parties, right? A male and a female. The male's role or function, which is the statutory term here, is to produce sufficient quantity of motile sperm. But your client was capable of doing that before and capable of doing that after. So how is it that his reproductive function, not the reproductive process, but reproductive function, has been altered? Well, it hasn't been altered, Your Honor. That's the point, is that the government is- Or influenced, or changed, or affected. It has been affected in accordance with the definitions that we're talking about here. It hasn't been altered, but it's been, reproduction has been accomplished. His role is indispensable in the reproduction and conceiving of a child. Right, but his role, this is what I'm sort of getting at. Even if we were to acknowledge that the reproductive process might have been influenced or changed, I don't think that his role or function within that reproductive process has been influenced or changed, because his role or function within that reproductive process is to produce and discharge the sperm, which he was capable of doing both before and after. Your Honor, no doubt, I do think that we might be interpreting even the statutory term of function a little differently than Your Honor, because when we think about this and we think about what Joe Morrissey's bodily functions were involved, we think about it in the same context as respiration or digestion. This is a bodily function. We're not talking about the function of heterosexual intercourse. Right, but you can breathe by yourself. Correct. You cannot reproduce by yourself. Reproduction is necessarily a two-party thing. Each party has a role or a function. Correct, Your Honor, and in those instances, both parties' reproductive functions are affected, both the male and the female. And we're not going to stand up here and dispute that the surrogate in this case had her body affected. Certainly she did. Well, to the extent that his body was affected, he would be permitted to take the deduction if the cost was high enough, right? That's correct, Your Honor, yes. What if the IRS, as I understand it, will not permit a deduction for a heterosexual man, everything else being the same, right? Your Honor, the two reported cases that we have, and there is not significant authority on this issue, Legino and Magdalene are the two reported cases that we have. And in those instances, it's true that the IRS disallowed the deduction, but those cases are vitally and clearly distinguishable from this one. In both instances, the male taxpayer had previously conceived children through heterosexual intercourse, and the courts in both instances were clearly very influenced by that fact. But how does that affect the statutory definition? Your Honor, we would say it shouldn't. We would disagree with the analysis employed by the courts in those cases, because they employed a but-for test. So you're saying not that they're distinguishable, but that they're wrong. Well, they're both. They are factually distinguishable. This court wouldn't have to declare those cases wrongly decided, because there are factual distinguishing things to look at here. But however, the analysis employed by both courts, that there needs to be some sort of pre-existing medical condition, that but-for that condition, the expenses wouldn't have been incurred, is it elevates one half of the statute that Judge Newsom, you asked about earlier, over the one that we're relying upon here. And one other thing I do want to mention about Legino since we're on it, and it comes from this court, that, in that case, if you look at the appellate briefing, the opening appellate brief, the taxpayer did not devote a single sentence to this deduction, because there were a host of deductions involved. The government's brief dedicated one sentence to it. And in this court's unpublished opinion, it disposed of this issue, saying that Legino fails to explain what evidence rebuts the decision of the tax court. So the only thing I would say to the court, in addition on Legino, is that this was not a heavily litigated issue, and we would urge that it should not control what happens here. So the underlying issue here, when we take a step back, even from the statute, and we think about this from a common sense perspective, Morrissey was the patient, and that's why the deduction should be allowed. The medical goal was his. It wasn't the surrogate's goal to become a biological parent. That was. The problem is, that's not what the statute says, though. I'm sorry, Your Honor? The statute doesn't make those sorts of, you know, it doesn't, that's not what the statute says. Well, the statute requires an effect. Not an effect on a goal, an effect on a function. Correct. And, of course, we contend that we have shown that. Now, and since there's significant focus on this notion of the third party surrogate, I would point out to the court as well that third party organ donors are regularly allowable deductible expenses. And in those instances, there are significant invasive procedures performed on unrelated third parties, not the taxpayer, spouse, or dependent. But their bodily functions are affected. That's the distinction. Whose, Your Honors? You said a donor, an egg donor? Yes, correct. Right, their bodily function is affected. Those expenses are deductible. The IRS allows taxpayers to deduct those expenses. They deny them here. That's a big difference, don't you think? We don't think so, Your Honor, no. Receiving the organ is not the same thing as receiving the egg? Or you're saying it is? No, it is. Well, it would be for the woman, if she is a taxpayer or the spouse. No doubt. The spouse, in that context, would have her bodily function affected. We don't dispute that. And it's there, and it's clear. But it seems strange to you. But that's not what we have here, Your Honor. But it seems strange, even in that heterosexual context, to suggest that the male, the husband, in that instance, somehow conceived the child without affecting his biological function of reproduction. How is that possible? It defies common sense. If you're going to conceive naturally, both the male and the female have their bodies affected. And it's critical, and it's indispensable. Well, I think you know what I'm going to say or ask. But I guess I'm just not sure that's right, that the male's function, which is the statutory term here, is affected if he is capable of discharging the sperm in sufficient quantities, both before and after. I just don't think I see how his side of the equation, if you will, has been affected. Well, because the mere discharge of that sperm is not going to result in reproduction. And he needs medical intervention for that to happen. Well, for the process to run its full course, yes. But I'm not sure about his role or function within that process. Yeah, well, from our perspective, it's as simple as this. Without medical intervention, Mr. Marcy could not reproduce. He's a homosexual male. Sexual orientation is an immutable trait. He can no more control his sexual orientation than he can his racial background. If he's ever going to reproduce, it's through IVF. The IRS has made the policy choice to subsidize medically-assisted reproduction. And the only way for homosexual men, like Joseph Marcy, to participate in that deduction, Your Honors, is through IVF. It's IVF or BUS for him. But they're treated the same. He's treated the same as the heterosexual males who use egg donors when surrogates reproduce. Your Honor, no, because I'm sorry, Your Honor. Aren't they treated the same? No, they're not, because those heterosexual males have all their alternatives. The impact of this standard is unfair on the homosexual male for that reason, because he has no alternatives. Your Honors, unless there's other questions now, I'll reserve the remainder of my time. All right, thank you. We'll hear from Mr. Pollack. May it please the Court, Nathaniel Pollack representing the United States in this appeal. Section 213 of the Internal Revenue Code defines medical care to include amounts paid for the purpose of affecting any structure or function of the body. And as this Court is aware, the body in that sentence means the body of the taxpayer, the taxpayer's spouse, or the taxpayer's dependent. Here, the taxpayer's body, including the structures and the functionality of his reproductive system, simply was not affected, was not altered, was not influenced or impacted in any way by the procedures performed on third-party egg donors and third-party surrogates. And those third parties, presumably, they could, maybe did, take the deductions? Do we know? I believe in this case, Mr. Morsi paid all the costs. And so, since they didn't pay their costs, then they wouldn't have taken the deductions. And if they had, then certainly they would be able to. The other point that I want to be- I'm sorry. No. These costs, they include only medical costs, or do they include sometimes just payment for doing the- They include both in the record. Does that make any difference? It could make a difference, Your Honor. The statute does allow for some costs that are incidental to medical care, assuming that this medical care definition is met. So, in the case of a female taxpayer who receives a donated egg, which we would say is analogous to the organ donation situation and is deductible, then some of those incidental costs in the private letter ruling that was cited were allowed. Another point that I want to be very clear on, because I think the waters have been muddied on this somewhat. The IRS applies this statute even-handedly. It does not allow anyone, regardless of sexual orientation, regardless of gender, regardless of even a condition of infertility, to deduct the costs of third-party surrogates. What about egg donor expenses? The government treats those differently than surrogate expenses, doesn't it? It does for a female taxpayer, so correct. So, here's what we would say the distinction in between those two cases are. In the case of a female taxpayer who receives an egg, a donated egg, into their body, that procedure very likely is treatment for a disease, but even if not, clearly affects the structure or function of the body. It's surgery performed on the woman that's going to have a significant physiological impact on that female taxpayer's body. That's not the case here, where the only impact that occurs is on the bodies of third parties, the third-party egg donors and the third-party surrogates involved in the IVF process. Now, what Mr. Morrisey is referring when he says that the IRS allows surrogacy for heterosexuals, what he's referring to is two cases that were settled in the context of litigation and resulted in stipulated decisions. And there's just no legal inference about the IRS's position can be drawn from those cases. In fact, the district court specifically found, in its opinion, that the IRS has, its position in this case is consistent with its position in other cases, and it's consistent with its position that it outlines in a 2002 information letter. So- And we don't consider settlements in any event, do we? That's correct, for a host of reasons that the consideration or a inference of an affirmative, what the IRS's position is based on a settlement that resulted in stipulated decisions is inappropriate, including the fact that obviously there are lots of reasons to settle unrelated to the merits, also including the fact that we can't discuss and shouldn't be able to discuss what the government's position regarding settlement in this case is. And so there's really no basis for comparison. Now, I want to discuss a couple points that came up. One is, Mr. Ulus talks about certain things that are aids, like hearing aids or eyeglasses. It's important to realize, as Mr. Ulus conceded at the beginning of his argument, we're talking only about the second prong of the medical care definition, the structure or function of the body prong. Those things, in other cases, like the swimming pool case and the elevator case, those are all under the disease prong of the statute. And so- Even so, I do want to test a bit the sweep, the seeming sweep of the statutory language, because, so if, I mean, if it's really that any amount paid for the purpose of affecting any structure or function of the body is deductible, I actually have genuine questions about why my gym membership is not deductible. I think other people have had those questions, Your Honor. I want to know why they've been resolved against me. I don't understand, frankly, under the plain language. Well, I think I would concede, Your Honor, that under the plain language, you've got a better argument there than Mr. Ulus does on this statute.  that language is quite broad, the structure or function of the body. We would submit that it's clearly not so broad as to take account of sort of, I don't know, like a metaphysical impact or whatever, that we think it's clear that it's talking about a physiological impact. Well, structure, right? There's a change going on to the structure of your body there. And the only thing I would say on that is the IRS has defined the term by keeping in mind the ordinary meaning of the term being defined. So it's medical care, and medical care has an ordinary meaning. And usually, simply a gym membership that's used just for general physical health. I mean, eating affects the structure or function of the body. Indeed, I was wondering about my meals next. And that's not deductible either. So I think that there's a limiting principle based on just the ordinary meaning of the term. So even in a statute that provides a specific definition of a term, to limit the scope of that definition, you can sort of peek behind to the ordinary meaning of the term being defined? I think that can be legitimate. And I also think, although it goes a little bit, there are also, at least, I'm not sure. I believe there are also regulations on those issues, or at least some of those issues. Certainly, there are IRS publications that say that you can't deduct your gym membership. So there may be other sort of Chevron deference considerations there as well. And I was wondering that too. Are you seeking, is the IRS seeking deference in this case? On any basis, Chevron, Skidmore, whatever? No, Your Honor. Although, I would point out that we do have in DOTCO, and this court has interpreted in DOTCO, in cases where a taxpayer is seeking a deduction, this court has said that a taxpayer has the burden of clearly showing the right to the claim deduction and coming within the letter of the deduction. That's this court's decision in Kurtz. So, and that's citing in DOTCO, which is the general standard that essentially says that, where the Supreme Court says that. Another- Evaluating the equal protection issue. Yes. What level of scrutiny is appropriate to give the IRS's position on this statute? Your Honor, our submission is that the court doesn't get to the level of scrutiny for at least two reasons. First of all, the standard when this court has set out when evaluating a facially neutral statute, which Mr. Morse concedes that this is, is one, that the plaintiff has to be treated differently than similarly situated persons. And number two, that the unequal application of the neutral statute was because of, for the purpose of discriminating against the plaintiff on a protected basis. And is that true even if you're on sort of the fundamental rights side of the house and equal protection as opposed to the suspect class side of the house? I think that there's some confusion in the appellant's briefing on that. It's true that fundamental rights can come under equal protection or substantive due process. What's not true is that you just sort of mush those analyses together. They're separate ideas. A fundamental rights claim is different than a claim that a facially neutral statute violates the equal protection clause. And on fundamental rights, really all this, all Mr. Morse is relying on is Skinner, which in Skinner, the Supreme Court defined a fundamental right not to be subjected to forced sterilization. We would submit that it's simply not the case that that right, the right not to be subjected to forced sterilization entails a right to be able to reproduce via an IVF procedure that includes a third party surrogacy and third party egg donors. Is the state able to articulate a compelling state interest to justify the denial of the deduction? What would be the compelling state interest? Well, the compelling state interest would be the equal application of the statute, I think. But I don't think we need to get there because first of all, people aren't being treated differently. So the first prong of the equal protection analysis where you have to point to somebody who's similarly situated, who's been treated less well, isn't there. And then second of all, it's gotta be under the equal protection clause, we're not talking about a effects test civil rights statute, we're talking about equal protection, there's gotta be an intent to discriminate. The only even remotely plausible evidence of an intent to discriminate that Mr. Morrissey points to are some unfortunate statements by a single IRS agent who was not the decision maker in the case. His submission was reviewed by a supervisory agent who actually denied the deduction in the first instance. And then he took an administrative appeal. And the administrative appeal went forward and upheld the denial of the deduction. And there's just no evidence that those people who actually were making the decision at the higher level were motivated in any way by an intent to discriminate on the basis of sexual orientation. Does Mr. Morrissey also say that you might infer an intent to discriminate from the refusal here even to allow the deduction for what I'll call the mail side expenses here, the $1,500 of the mail side expenses? Or is that fully answered by Judge Wilson's earlier observation that that didn't cross the threshold anyway? I think that is, and I think there's also just no evidence that that was even presented to the IRS for separate consideration as an initial matter. Certainly it came out in the detailed stipulations that were made before the district court. But the government conceded in the district court that that expense, that $1,500 is allowable, expressly conceded that in its stipulations before the district court. So no, I don't think there's. But just doesn't cross the 7.5% threshold in any event. Exactly, that's correct. Thank you, Mr. Pollack. There are no further questions, Your Honor. I think I'm finished with my presentation. Thank you, Mr. Pollack. Order again from Mr. Ulus. Thank you, Your Honors. I want to talk about first about this notion of the elevator swimming pools, gym memberships. Let's first deal with the hypothetical gym membership. This is distinguishable from circumstances like that, because this is an inherently medical procedure. There are doctors in white lab coats here. Highly sophisticated procedure involved that created human life. Regarding the elevator swimming pools and air conditioners, those cases, if the court reviews them, the court will observe that the courts in those cases never said that we're allowing the deduction under the disease prong. Court was silent on that. And we would say this because it satisfies both definitions. Now, this notion about disproportionate treatment and discriminatory purpose, I want to go back to this threshold issue, because we do think that this is significant circumstantial evidence of discriminatory purpose. And here's why. There's no doubt that those costs wouldn't have exceeded the threshold. The problem the IRS has is that this is a two-step analysis under Section 213. One, do we have qualified medical care? If the answer is yes, does it surpass the threshold? The IRS had to answer the first question in the affirmative for those expenses, but it never bothered doing so. So it never even got to the stage of asking itself whether or not it's going to surpass the threshold. Instead, it just categorically denied all the expenses. And I have to sit here as Mr. Morrissey's lawyer and wonder why. Now, I also want to talk about the practical consequences. Can I ask just a quick question about that? Yes, Your Honor. I think I sort of understand what you're saying. But this, in the end, is a suit on a tax deduction, to which I guess at the end of the day, you're not entitled, right? I mean, what would be the relief, even if you were right, that there were some inference of discriminatory intent? What would be the relief in a suit for a tax deduction which you've conceded you're not entitled to? Your Honor, what we would want the court to do is impute that the IRS's actions there to show that the denial of all the other expenses were motivated by that discriminatory purpose in awarding the complete deduction, is what we would say. So fundamentally, what we're left with in this case, or what we would say are two truisms, and frankly, sometimes wondering why we're even at this stage and it took this long, and the government continues to persist. Reproduction is a bodily function. That's a truism, I would think. I don't think there's any more dispute. The government disputed that at the district court, seems to have abandoned it on appeal. And we would say that there's no more fundamental way to impact one's reproductive function than having a child and biologically fathering a child. And for those reasons, we do believe that the court should reverse the district court. Thank you, your honors, unless there's any questions. Thank you, Mr. Hewlett and Mr. Pollack.